## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PATTERSON MIMS and<br>VERA MIMS, | )<br>) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Civil Action No. 13-298-SLR-CJB |
| | ) |
| 84 LUMBER COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This matter arises out of an asbestos personal injury action filed by Plaintiffs Patterson

Mims and Vera Mims ("Plaintiffs") against numerous Defendants, including Defendants Foster

Wheeler Energy Corporation ("Foster Wheeler") and CBS Corporation, f/k/a Viacom Inc.,

successor by merger to and f/k/a Westinghouse Electric Corporation ("Westinghouse") in the

Superior Court of Delaware, in and for New Castle County ("Superior Court"). (D.I. 46, ex. A

(hereinafter, "Complaint"))  Foster Wheeler removed the state court action to this Court pursuant

to 28 U.S.C. §§ 1442(a)(1) and 1446, (D.I. 1), and Westinghouse joined in Foster Wheeler's

Notice of Removal that same day, (D.I. 3).  Foster Wheeler and Westinghouse (collectively,

"Defendants") argued, as the basis for removal, that any actions they took relating to Plaintiffs'

claims came when they were acting under an officer or agency of the United States within the

meaning of Section 1442(a)(1).  (D.I. 1, 3)  Presently pending before the Court is Plaintiffs'

motion to remand this action to Delaware state court, on the grounds that Defendants' removal

was untimely in light of the requirements of Section 1446(b)(3) (the "motion to remand" or

"Motion").  (D.I. 45)  For the reasons that follow, I recommend that the motion to remand be

GRANTED.

## I.    BACKGROUND

Plaintiffs filed this lawsuit in the Superior Court on July 13, 2012. (*See* Complaint) In the Complaint, as is discussed more specifically below, Plaintiffs asserted state law causes of action based on Plaintiff Patterson Mims' alleged exposure to asbestos-containing products while working in three different settings between 1959 and 1994. (*Id.*) Westinghouse and Foster Wheeler were served with Plaintiffs' Summons and Complaint on August 27, 2012 and August 29, 2012, respectively. (D.I. 46, exs. B & E)

On January 8, 2013, Plaintiffs served their responses to all defendants' Standard Set of Interrogatories. (D.I. 46, ex. D (hereinafter, "Responses to Interrogatories" or "Responses")) Foster Wheeler received the Responses to Interrogatories on the same date. (D.I. 66 at 3 & ex. 4) On January 23 and January 24, 2013, Mr. Mims sat for his deposition, during which he testified that between 1967 and 1970, he was present at the Charleston Naval Shipyard while others performed work on approximately three Foster Wheeler boilers. (*Id.*, ex. 5 at 135-36)

On February 22, 2013, Foster Wheeler filed its notice of removal in this Court, contending that it first ascertained that the state court action was removable under Section 1442(a)(1), the federal officer removal statute, from the content of Mr. Mims' deposition testimony. (D.I. 1) On the same date, Westinghouse filed its notice of joinder with respect to Foster Wheeler's notice of removal. (D.I. 3) On March 12, 2013, this matter was referred to the Court by Judge Sue L. Robinson to "conduct all proceedings . . . [and] hear and determine all motions[], through and including the pretrial conference." (D.I. 35)

On March 19, 2013, Plaintiffs filed the motion to remand, asserting that the notice of removal was untimely filed. (D.I. 45) Plaintiffs' motion was fully briefed as of April 2, 2013.

2

(D.I. 66)[1]

## II.    STANDARD OF REVIEW

The federal officer removal statute permits removal of a state court action to federal court

when, *inter alia*, such action is brought against "[t]he United States or any agency thereof or any

officer (or any person acting under that officer) of the United States or of any agency thereof, in

an official or individual capacity, for or relating to any act under color of such office[.]" 28

U.S.C. § 1442(a)(1). In order to remove pursuant to Section 1442(a)(1), a defendant must

establish the following: (1) it is a "person" within meaning of the statute; (2) the plaintiff's

claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a

colorable federal defense; and (4) there is a causal nexus between the claims and the conduct

performed under color of a federal office. *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d

124, 127 (3d Cir. 1998); *Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 223 (D. Del. 2009).

Unlike the case with the general removal statute, 28 U.S.C. § 1441, which courts must construe

strictly in favor of remand, the federal officer removal statute is to be construed broadly, in order

to effectuate Congress' intent that federal officers have access to a federal forum in which they

can litigate the validity of their defense of official immunity. *Sun Buick, Inc. v. Saab Cars USA,*

*Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp.

2d 736, 741 (E.D. Pa. 2011). Nevertheless, it remains well-settled that the party removing an

action to federal court bears the burden of proving that removal is appropriate. *Kirks*, 654 F.

---

[1]    The briefing on this motion consists of Plaintiffs' opening brief in support and
Foster Wheeler's answering brief in opposition. (D.I. 46, 66) Westinghouse did not respond to
Plaintiffs' motion, and Plaintiffs did not file a reply brief. In light of Westinghouse's failure to
respond, the Court considers only arguments put forward by Foster Wheeler.

3

Supp. 2d at 222 (citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).

While Section 1442 governs the substantive requirements for federal officer removal, the timeliness of removal is dictated by Section 1446. Section 1446(b) provides that a defendant must file a notice of removal within thirty days after the receipt of the initial pleading. 28 U.S.C. § 1446(b). If the basis for removal is not set forth in the initial pleading, however, a defendant must remove within thirty days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]" 28 U.S.C. § 1446(b)(3).[2]

In analyzing the timeliness of removal pursuant to Section 1442, courts must consider whether the document at issue "informs the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present." *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53-54 (3d Cir. 1993), *overruled on other grounds*, *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999); *In re Asbestos Prods. Liab. Litig.*, 770 F. Supp. 2d at 740.[3] If so, receipt of the document triggers the thirty-day clock for removal to run under Section 1446. *Foster*, 986 F.2d at 53-54. The analysis for determining whether the document at issue sufficiently put the defendant on notice of removability is an objective one: "the issue is not

---

[2]      The thirty-day removal limitation is meant to "'deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.'" *Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 631 (7th Cir. 2007) (quoting *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982)).

[3]      The timeliness of removal is an issue of federal law. *In re Asbestos Prods. Liab. Litig.*, 770 F. Supp. 2d at 739.

what the defendant knew, but what the relevant document said." *Id.* (internal quotation marks and citation omitted).[4] As with jurisdiction, the defendant bears the burden of showing the timeliness of removal. *Scearce v. 3M Co.*, Civil No. 12-6676 (RBK/JS), 2013 WL 2156060, at *3 (D.N.J. May 16, 2013) (citing cases).

## III.   DISCUSSION

Foster Wheeler is "a manufacturer of boilers and economizers for the United States Navy, among other equipment." (D.I. 66 at 2)  In the design, manufacture and sale of its boilers and auxiliary equipment for the Navy, including all aspects of warnings associated with such products, Foster Wheeler contends that it was acting under the direction of an officer or agency of the United States within the meaning of Section 1442(a)(1), and thus is entitled to a "government contractor immunity" defense to Plaintiffs' claims. (D.I. 1 at 3; D.I. 66 at 4)

Plaintiffs do not contest that Foster Wheeler has established all four substantive requirements necessary to remove this action pursuant to the federal officer removal statute.[5]

_____

[4]    In *Foster*, the United States Court of Appeals for the Third Circuit held that the first thirty-day window for removal is triggered only when the four corners of the initial pleading informs a defendant that all elements of federal jurisdiction are present. *Foster*, 986 F.2d at 53. While the objective standard set by the *Foster* Court was enunciated in the context of this first thirty-day removal period referenced in Section 1446, the Third Circuit has not yet reached the issue of what test applies to assess when the second thirty-day window under Section 1446(b)(3) triggers removal. *Bouchard v. CBS Corp.*, Civil Action No. 2:11-CV-66270-ER, 2012 WL 1344388, at *5 (E.D. Pa. Apr. 17, 2012); *see also Scearce v. 3M Co.*, Civil No. 12-6676 (RBK/JS), 2013 WL 2156060, at *3 n.3 (D.N.J. May 16, 2013). Because removal inquiries should be confined to court-related documents, and should not require courts to engage in "'arduous inquiries into [a] defendant's state of mind[,]'" the Court assumes that the objective *Foster* standard applies in evaluating timeliness under Section 1446(b)(3). *Bouchard*, 2012 WL 1344388, at *5 (quoting *Foster*, 986 F.2d at 53); *see also Scearce*, 2013 WL 2156060, at *3 n.3.

[5]    Much of Foster Wheeler's answering brief relates to these requirements. (D.I. 66 at 4-6, 10-19)

5

Rather, Plaintiffs argue that Foster Wheeler's notice of removal was untimely filed because Foster Wheeler failed to remove within thirty days of receiving Plaintiffs' Summons and Complaint, or, alternatively, Plaintiffs' Responses to Interrogatories. (D.I. 46) In response, Foster Wheeler argues that both the Complaint and Responses to Interrogatories were too "vague and ambiguous" to provide it with a good faith basis for removal; it asserts that it was not until Plaintiff testified during his deposition that it was able to ascertain that this case was removable. (D.I. 66 at 2-3, 6-8)

In support of their argument that the Complaint gave Foster Wheeler sufficient notice of the removability of this action, thereby triggering the thirty-day removal period, Plaintiffs cite to paragraphs 93-97 of the Complaint. (D.I. 46 at 2) These paragraphs of the Complaint establish the following:

> (1) Mr. Mims was allegedly exposed to asbestos-containing products and equipment while performing construction on his home from 1959 to 1961, while working at the Lake Charles United States Air Force Base in Louisiana ["Lake Charles AFB"] as a plane refueler from 1961 to 1966, and while working at the Charleston Naval Shipyard in Charleston, South Carolina ["Charleston Naval Shipyard"] as a pipefitter from 1966 to 1994;
>
> (2) The type of asbestos-containing products and equipment that Mr. Mims alleges he was exposed to during these periods included, but was not limited to, "asbestos-containing pumps, valves, packing, gaskets, insulation, boilers, turbines, cooling towers, pipe, paint, HVAC equipment, and raw asbestos";
>
> (3) These asbestos and/or asbestos-containing products were alleged to have been "mixed, mined, manufactured, distributed, sold, removed, installed and/or used" by each of the defendants sued in the complaint, including Foster Wheeler; and
>
> (4) These products were alleged to have caused Mr. Mims certain injuries and diseases, including lung cancer.

(Complaint at ¶¶ 93-97; *see also id.* at ¶ 38)

As to their alternative argument that the Responses to Interrogatories sufficiently alerted Foster Wheeler as to removability, Plaintiffs do not cite in support to specific portions of that document. However, Plaintiffs did attach the Responses to their filing; certain of the Defendants' interrogatories sought information regarding the nature of Mr. Mims' prior work history, what asbestos-containing products he was alleging that he was exposed to and how those products were linked to individual defendants in this case. (*See, e.g.*, D.I. 46, ex. D at 4-8)[6] In response to those interrogatories, Plaintiffs referred back to the allegations in the Complaint, and referred to "work history sheets" attached to the Responses. (*Id.*) One of these work history sheets (hereinafter, "Work History Sheet") contained slightly more specific information about Plaintiffs' allegations of asbestos exposure at the Lake Charles AFB and the Charleston Naval Shipyard. (*Id.* at ex. A) For example, as to the Charleston Naval Shipyard, the Work History Sheet stated that Mr. Mims had worked there from November 1966 through September 1994, that he worked there as a pipefitter in the "Construction/Maintenance/Repair" business, and that he worked with "[a]sbestos containing products" there including, but not limited to, "boilers, valves, pumps, HVAC, electrical motors, generators, switchboards and controls." (*Id.*)[7]

---

[6]     Defendants' interrogatories requested details such as, for each named defendant, the name of the asbestos-containing products at issue, the name of Mr. Mims' employer at the time he worked with or around such product, and a full description of each product. (*See* Responses to Interrogatories at No. 11 & 13)

[7]     As to Mr. Mims' work at Lake Charles AFB from 1961 to 1966, the Work History Sheet highlighted different types of products that Mr. Mims was said to have been exposed to there, including, but not limited to "joint compounds, floor tiles, roofing supplies, cement sewer pipe, and brakes." (D.I. 46, ex. D at ex. A) As a result, the Responses and attached Work History Sheet make it a bit more clear than did the Complaint that Mr. Mims' allegations regarding asbestos-containing "boilers" were particularly related to his work at Charleston Naval Shipyard, as opposed to his work at the other two locations.

7

Plaintiffs argue that both the Complaint and Responses to Interrogatories provided Foster Wheeler with sufficient notice of removability because the documents stated "the places of employment where [Mr. Mims] was exposed to asbestos as a result of Foster Wheeler['s] manufacture and sale of products, specifically identifying while in the United States Air Force and the US Naval Shipyard at Charleston." (*Id.* at 3; *see also id.* at 5) Plaintiffs assert that "[t]he fact that the same information was later repeated in Mr. Mims' deposition does not change the fact that Foster Wheeler [] was previously provided with the information." (*Id.* at 5)

For its part, Foster Wheeler contends that Mr. Mims' deposition testimony provided new information that for the first time enabled it to ascertain that removal was appropriate. The specific thirteen lines of deposition testimony that Foster Wheeler cites in support of the latter proposition are as follows:

> Q: Do you ever see any Foster Wheeler boilers being worked on out at the Charleston Naval Shipyard when you were out there?
>
> A: Same period of time, '67, '68, '69, '70. . . .
>
> Q: Did you see the same type of work being done on the Foster Wheeler boilers as you talked about on the York?
>
> A: Yes. They take the manways off—or not manways, but manholes, you know. Take piping loose, take all your steam piping loose on it. Take all the lagging off of it, all the insulation off of it.

(D.I. 66, ex. 5 at 135-136; *see also* D.I. 1 at 2; D.I. 66 at 4)[8]

---

[8]     In other portions of the two pages of deposition testimony included by Foster Wheeler as an exhibit to its answering brief, Mr. Mims states that: (1) he recalls being exposed to three Foster Wheeler boilers during his work from 1967 to 1970 at the Charleston Naval Shipyard; (2) he identified them as Foster Wheeler boilers by an identifying "FW" mark on the boilers; and (3) when insulation was pulled off of the boilers, dust and debris was released into the air. (D.I. 66, ex. 5 at 135-36)

However, Foster Wheeler's argument as to *why* the information in Mr. Mims' deposition

was sufficient to put it on notice of its government contractor defense—and relatedly, *why* the

prior information in Plaintiffs' Complaint and Responses were deficient in this regard—is

difficult to follow. In an early portion of Foster Wheeler's answering brief, it points out the

nature of certain information that it contends was lacking in Plaintiffs' Complaint and

Responses:

> There was no mention of any of Mr. Mims' duties and responsibilities as
> [a] plane refueler at Lake Charles Air Force Base or as a pipefitter at CNS
> [Charleston Naval Shipyard], nor was it clear whether he worked
> exclusively at the shipyard or on specific Navy ships. Neither 'paper'
> alleged that Mims was exposed to asbestos from equipment manufactured
> by Foster Wheeler while he was employed at CNS. Thus, neither the
> Complaint nor plaintiffs['] Interrogatory responses stated plaintiffs' claims
> in a manner or in sufficient detail to inform Foster Wheeler that the case
> was removable.

(D.I. 66 at 3) Later in its brief, Foster Wheeler faults Plaintiffs' Complaint and Responses for

failing to "provide a clear or apparent basis for removal[,]" and cites the documents' failure to

provide "details surrounding [Mr. Mims'] duties and responsibilities" at Lake Charles AFB and

the Charleston Naval Shipyard, the documents' failure to establish whether "Mims worked

exclusively on the grounds of CNS on a Navy ship" and the documents' silence "about

manufacturers of products to which he claimed exposure." (*Id.* at 6) Still later in its answering

brief, Foster Wheeler states that it was not until Mr. Mims' "specifically identified Foster

Wheeler boilers on Navy ships on which he worked as a source of his alleged asbestos

exposure[,]" that it was put on notice of removal, as it was "only then that Foster Wheeler was

sufficiently apprised that it was being sued in connection with plaintiff's alleged exposure to

asbestos from its boilers, which were manufactured pursuant to strict and exacting Navy

9

specifications." (*Id.* at 8).

While these portions of Foster Wheeler's brief raise various possibilities, what they do not do is clearly indicate the particular type (or types) of factual information Foster Wheeler asserts that it needed, under the circumstances of this case, in order to clearly ascertain that the case should be removed. The references above could suggest various answers—that more information was needed as to Mr. Mims' "duties and responsibilities" at the respective locations, or where Mr. Mims worked in addition to those locations, or about the "specific Navy ships" he worked on, or as to which work location he was asserting that Foster Wheeler was associated with, or as to what type of Foster Wheeler product his allegations related. But because these possibilities are mentioned but not expanded upon, Foster Wheeler never explains which of these details was essential—and more importantly, it does not explain *why* it needed to know those details in order to ascertain removability, based on its relationship with the products, employers or locations that are listed in the Complaint and Responses.

This type of clear explanation only comes at the end of this portion of Foster Wheeler's answering brief, when Foster Wheeler states:

> The allegation[s] in the Complaint and Interrogatory Answers were entirely incomplete and insufficient, and did not end the inquiry as to whether Foster Wheeler's boilers were present on any Navy ships aboard which Mr. Mims worked. *There were hundreds, if not thousands, of Navy ships built and repaired at various shipyards and many did not contain Foster Wheeler boilers. Until Foster Wheeler knows, at the very least, the identity of the Navy ship(s) at issue, it cannot, in good faith, make a removal determination.* The scant information provided by plaintiffs in the Complaint and Interrogatory Answers did not put Foster Wheeler on notice that exposure to Foster Wheeler boilers, specified by the Navy, manufactured by Foster Wheeler in accordance with strict Navy specifications and manufactured at and under the direction of the Navy, was the source of any alleged exposure in this action. Accordingly, until plaintiff *specifically testified to being exposed to asbestos from Foster*

10

*Wheeler boilers on surface ships at [Charleston Naval Shipyard]*, Foster
Wheeler had no good faith basis to remove this action to this Court.

(*Id.* at 10 (emphasis added)) In this portion of its brief, then, Foster Wheeler clarifies the nature

of its argument as to why the Complaint or Responses were insufficient to enable it to earlier

ascertain the removability of the action. The argument appears to center on a lack of information

in those prior documents as to *the particular ships* on which Mr. Mims worked at the Charleston

Naval Shipyard, as some of those ships contained "Foster Wheeler boilers[,]" while some "did

not[.]" Thus, Foster Wheeler needed to know "the identity of the Navy ship(s) at issue" from

among the "hundreds, if not thousands, of Navy ships built and repaired" at the shipyard—in

order to determine whether *the particular ships* on which Mr. Mims worked actually contained

Foster Wheeler boilers, and thus, whether the case could properly be removed.

In laying out the insufficiency of Plaintiffs' prior allegations this way, Foster Wheeler

also indicates what it is *not* arguing. It is not, for example, claiming deficiency on the grounds

that it supplied boilers to both governmental and non-governmental vessels or entities at the

shipyard (i.e., were it claiming that more information was necessary for it to determine whether

Mr. Mims came into contact with its boilers on a governmental or non-governmental ship). Nor

does it claim deficiency on the grounds that the allegations did not make it clear enough at what

work location (i.e., Mr. Mims' home, the Lake Charles AFB, or the Charleston Naval Shipyard)

Plaintiffs were alleging Foster Wheeler-related exposure (i.e., were Foster Wheeler to have had a

federal defense as to products supplied to one location, but not another). It does not claim

deficiency on the grounds that the prior allegations left it unclear as to whether its *boilers*—as

opposed to some other product it manufactured—were the alleged source of exposure (i.e., were

it to claim that certain of its products supplied to the site might be subject to a federal defense,

11

  
but certain others might not). And it does not claim deficiency on the grounds that it needed to know *which of* its boilers supplied to the site were at issue (i.e., were it arguing that some such boilers were designed and manufactured pursuant to the Navy's precise specifications, while others were not).

With this in mind, the difficulty with Foster Wheeler's argument is that the deposition testimony that it cites as being sufficient to put it on notice of a federal defense does not provide the missing information that it now claims was essential to its ability to ascertain the availability of the defense. Indeed, in the deposition testimony excerpt put forward by Foster Wheeler, Mr. Mims does *not* specifically identify any particular Navy ship that he worked on at the Charleston Naval Shipyard.[9] (*See* D.I. 66, ex. 5) In the excerpt, Mr. Mims simply agrees that he saw Foster Wheeler boilers being worked on "out at the Charleston Naval Shipyard" or "out at the Shipyard[.]" (*Id.* at 135) Instead, what the deposition excerpt does do (that the Complaint and Responses before them did not do explicitly) is to (1) identify a more limited timeframe of Mr. Mims' alleged exposure to asbestos from Foster Wheeler boilers (1967-1970); (2) identify at what work site the exposure is alleged to have occurred (the Charleston Naval Shipyard); (3) identify how many Foster Wheeler boilers were at issue (three) and (4) identify the manner in which the alleged exposure occurred (from dust and debris generated when workers took the manholes, lagging, and insulation off of the boilers while loosening certain piping). (*Id.* at 135-136) But again, none of these "new" facts are what Foster Wheeler now asserts was the previously-missing link necessary to alert it to the availability of a federal defense.

---

[9]     Nor does Foster Wheeler's briefing otherwise identify any such ship called out by Mr. Mims in his deposition.

This matter is therefore somewhat similar to the recent case of *Scearce v. 3M Co.*, Civil

No. 12-6676 (RBK/JS), 2013 WL 2156060 (D.N.J. May 16, 2013). In *Scearce*, the plaintiffs

alleged in their First Amended Complaint, filed against numerous defendants in state court, that

"'[f]rom approximately 1983 to 2004, [a plaintiff] was exposed to asbestos-containing products

while conducting electric repair work at various Air Force base sites, including McGuire Air

Force Base in New Jersey. [Plaintiff] was additionally exposed to asbestos from

communications equipment being installed and used during the same time period at that

location.'" *Scearce*, 2013 WL 2156060 at *1 (citation omitted). Defendant Raytheon removed

the case to federal court months later. *Id.* at *2. In doing so, it argued that removal was timely

because it only learned that the case was removable during plaintiff's deposition (taken within a

month of the removal), in which plaintiff revealed that "'the only specific Raytheon product

about which he complains is the AN/TRC-170, a digital troposcatter radio system.'" *Id.* (citation

omitted). Plaintiffs thereafter filed a motion to remand the case, challenging Raytheon's removal

as untimely; Plaintiffs argued that the content of its First Amended Complaint had been sufficient

to provide notice to Raytheon that the case was earlier removable. *Id.* at *3. In opposing the

motion, Raytheon asserted that because it had developed a wide range of communications

systems utilized by the Air Force, the amended complaint did not provide it with enough facts to

determine which of its products might fall within the allegations, let alone the "level of military

involvement, if any, with such product(s)." *Id.* at *4 (citation omitted).

The United States District Court for the District of New Jersey denied Raytheon's

motion, finding that the motion was untimely under Section 1446(b)(3). *Id.* at *5. The *Scearce*

Court agreed that, given the breadth of its operations, Raytheon could not have concluded from

13

the amended complaint and an accompanying fact sheet that the AN/TRC-170 was its product-at-issue in the case. *Id.* However, the district court explained that Raytheon had "*failed to establish why the company needed to know the specific product in order to ascertain removability.*" *Id.* (emphasis added). Unlike the defendants in other similar cases where removal was upheld as timely,[10] the district court held that Raytheon "has not stated that it supplied other products to the Air Force that would not have been subject to the defense." *Id.* Although recognizing that it "very well could" be the case that Raytheon had "provided various products to the Air Force, some of which would not have justified federal officer removal[,]" the *Scearce* Court explained that Raytheon was required to make that showing, in order to meet its burden to demonstrate the timeliness of removal. *Id.* Yet the Court found that Raytheon had not done so, as it had failed to link the new information learned through the plaintiff's deposition to an explanation of the type

---

[10]      One such case cited by the *Scearce* Court was *Bouchard v. CBS Corp.*, Civil Action No. 2:11-CV-66270-ER, 2012 WL 1344388 (E.D. Pa. Apr. 17, 2012). In *Bouchard*, defendant Lockheed Shipbuilding Corporation ("Lockheed") removed the case to federal court upon learning in deposition testimony that a plaintiff's claims against it related to the plaintiff's work on two particular military ships while at a Lockheed site. *Bouchard*, 2012 WL 1344388, at *4-5. Lockheed clearly explained to the district court that "like other federal military contractors, [it] performs activities that are protected by federal contractor immunity, and others that are not"—and so it had sufficiently articulated why "[u]ntil deposition testimony revealed which ships [plaintiff] had worked on during his employment, [Lockheed] could not assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense." *Id.* at *7; *see also Beamis v. Buffalo Pumps, Inc.*, C.A. 08-472S, 2009 WL 462543, at *3 (D.R.I. Feb. 23, 2009) (denying plaintiff's motion to remand where removing defendant GE asserted that it sold "'off-the-shelf'" products to the government that are not custom manufactured to specification, and thus would not justify federal officer removal, and so it could only ascertain that removal was appropriate when plaintiff's later discovery responses specified particular submarines on which he worked, many of which were equipped with GE marine turbines manufactured to specification for the Navy). The *Scearce* Court thus cited *Bouchard* as an example of a case where the defendant had clearly "stated" why certain information provided in a deposition was necessary to give rise to removal, and contrasted that with Raytheon's failure to clearly do the same. *Scearce*, 2013 WL 2156060 at *5 (noting that instead, Raytheon had simply "argu[ed] that Plaintiffs' allegations were not sufficiently detailed").

14

of information (not previously provided) that would have allowed it to ascertain the availability

of a federal defense. *Id.* Since Raytheon had not "carried its burden of demonstrating the

timeliness of removal[,]" the matter was remanded to state court. *Id.*

Similarly, in *Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325 (D. Conn. 2008),

removing defendant Buffalo Pumps, Inc. argued that it could not ascertain removability until a

report by plaintiff's expert disclosed the details of the plaintiff's husband's Navy service. *Id.* at

332. Buffalo Pumps removed the case to federal court thirty days after its receipt of the report.

*Id.* at 327, 334. However, the United States District Court for the District of Connecticut granted

the plaintiff's motion to remand, finding Buffalo Pumps' removal to be untimely. *Id.* at 334. It

did so because Buffalo Pumps' "grounds for removal [were] not traceable to the information

confirmed and described" in the expert's report, such that its "claim that the [] report was the

event which triggered removability" was not supported by its "own submissions." *Id.*; *cf.*

*Savelesky v. Allied Packing & Supply Inc.*, No. C 11-01778 SI, 2011 WL 2610179, at *4 (N.D.

Cal. July 1, 2011) (granting motion to remand where removing defendant "d[id] not explain"

how deposition testimony, asserted to give rise to knowledge of removability, differed from an

earlier admission made by plaintiff more than 30 days before the motion to remand was filed).

Here, as in *Scearce* and *Pantalone*, it was the removing defendant's burden to

demonstrate the timeliness of removal—by explaining what it was about the content of Mr.

Mims' deposition that made its federal defense now ascertainable for the first time. Yet as in

*Scearce* and *Pantalone*, here the Court feels compelled to find that Foster Wheeler has not met

that burden, as here, the deposition testimony Foster Wheeler points to does not include the very

information it now asserts was critical to gaining knowledge of the defense's applicability.

15

Therefore, Foster Wheeler has not carried its burden of establishing the timeliness of its removal nor why the Complaint or Responses were insufficient to put it on notice of its federal defense. While Mr. Mims' deposition testimony "may have rendered removability *uncontestable*[,] the 30-day clock began ticking . . . when removability was first *ascertainable*." *Dilks v. 4520 Corp., Inc.*, Civil No. WDQ-12-2758, 2012 WL 6625867, at \*4 n.12 (D. Md. Dec. 18, 2012) (citing 28 U.S.C. ¶ 1446(b)(3)); *see also Scearce*, 2013 WL 2156060 at \*5. In the absence of a clearly articulated showing by Foster Wheeler as to why removability was not ascertainable until Mr. Mims' deposition, the Court must recommend that Plaintiffs' Motion be granted.

## IV.    CONCLUSION

For the reasons set forth above, I therefore recommend that this Court GRANT Plaintiffs' motion to remand.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order in Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

16

Dated: September 6, 2013

_Christopher J. Burke_

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

17